IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FIMIC, S.r.L.,

     Plaintiff,

               v.

ADG Solutions, Inc.,

     Defendant.

Civil Action No.
1:19-cv-05636-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant ADG Solutions, Inc.'s (ADG)

renewed summary judgment motion [ECF 76] and objections to Plaintiff FIMIC,

S.r.L.'s (FIMIC) proffered declaration of Erica Canaia [ECF 86]. After careful

consideration of the parties' briefing, and with the benefit of oral argument, ADG's

renewed summary judgment motion [ECF 76] is **GRANTED IN PART and**

**DENIED IN PART**. ADG's objections to the declaration of Erica Canaia [ECF 86]

are **OVERRULED.**

## I.    Background

The following facts are agreed unless otherwise noted. FIMIC is an Italian

company that specializes in the design and manufacture of automatic and self-

cleaning melt filters that process and clean post-consumer plastics and other materials.[1] This dispute concerns the RAS Filter, FIMIC's flagship filter.[2]

In 2010, FIMIC and ADG negotiated an oral agreement (the Agreement),[3] making ADG the North American representative and exclusive distributor of FIMIC products, including the RAS Filter.[4] The terms of the Agreement are disputed. FIMIC insists that they were set forth in a written exclusive distribution contract (the Contract), except for Paragraph 1.3, which would have obligated ADG to purchase at least five RAS Filters each year.[5] ADG contends that since it never executed the Contract, ADG did not submit to any of the Contract's terms.[6]

Pursuant to the parties' oral Agreement, ADG operated as FIMIC's exclusive North American distributor from 2010–2015.[7] During this time, ADG

---

[1]   ECF 85, ¶¶ 1–2.

[2]   *Id.* ¶ 4.

[3]   The terms of the Agreement are presented side-by-side in Italian and English. Neither party disputes the accuracy of the English translation on which the Court relies for purposes of this Order.

[4]   ECF 81-1, ¶¶ 2–3, 9; ECF 85, ¶ 5.

[5]   ECF 85, ¶ 7.

[6]   ECF 81-1, ¶¶ 10–12, 14; ECF 85, ¶ 6.

[7]   ECF 76-6, ¶ 2; ECF 85, ¶ 14.

sold 12 RAS Filters.[8] FIMIC understood that ADG would also promote the sale of products made by other manufacturers.[9] In April 2015, FIMIC terminated ADG's status as its exclusive dealer in North America,[10] though the parties dispute whether their relationship ended in 2015 or 2016.[11]

FIMIC alleges that, after it terminated the oral Agreement, it learned that ADG was selling replacement parts to FIMIC machines and using FIMIC's confidential information and trade secrets—the RAS Filter's processes and mechanical workings[12] and information it received from FIMIC[13]—without authorization.[14] FIMIC also claims that ADG used FIMIC's "distinctive signifiers," including the RAS Filter's color and overall design, in violation of the Agreement.[15]

---

[8]   ECF 81-1, ¶ 15.

[9]   *Id.* ¶ 5.

[10]  *Id.* ¶ 49.

[11]  *Id.* ¶ 53.

[12]  ECF 85, ¶ 19.

[13]  *Id.* ¶ 18.

[14]  *Id.* ¶¶ 15–16.

[15]  *Id.* ¶ 17.

ADG allegedly leveraged this information to create a copycat machine (the CFO Machine), which supposedly mimicked the RAS Filter's overall shape, design, and distinctive blue color.[16] ADG freely admits that, after ADG stopped working with FIMIC, it "borrowed a used RAS filtration machine" and "then hired a third[-]party to create engineering drawings . . . to reverse engineer" the RAS Filter and create the CFO Machine.[17]

At a 2017 trade show in Orlando, Florida, a FIMIC customer allegedly observed ADG's CFO Machine, and reported to FIMIC that he believed he had seen the RAS Filter.[18] In 2021, Aaron Industries, another FIMIC customer, informed FIMIC that it referred to both the RAS Filter and the CFO Machine as the "CFO."[19] ADG admits to selling five CFO Machines since April 2015, including the one at the 2017 trade show in Orlando that was allegedly mistaken for the RAS Filter.[20]

On December 17, 2019, FIMIC filed suit, alleging violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b), *et seq.* (DTSA, Count I) and the

---

[16]   *Id.* ¶¶ 29–31.

[17]   ECF 81-1, ¶¶ 54–57.

[18]   ECF 85, ¶ 34.

[19]   *Id.* ¶ 35.

[20]   ECF 81-1, ¶¶ 69, 71.

Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq.* (GTSA, Count II) (together, the Trade Secrets Claims); breach of contract or, in the alternative, promissory estoppel or unjust enrichment (Counts III, IV, and V, the Contract Claims); trademark and trade dress infringement (Count VI, the Trademark Claim); and tortious interference with business relationships (Count VII, the Tortious Interference Claim).[21] On February 7, 2020, ADG filed a summary judgment motion[22] and a motion to stay discovery.[23] After oral argument on February 19, the Court denied ADG's motion to stay discovery.[24] On February 28, FIMIC moved the Court to defer ruling on ADG's summary judgment.[25] The Court granted FIMIC's motion on June 17,[26] and denied ADG's summary judgment motion without prejudice.[27]

---

[21]   *See generally* ECF 1.

[22]   ECF 22.

[23]   ECF 23.

[24]   ECF 30.

[25]   ECF 33.

[26]   D.E. 6/15/20.

[27]   D.E. 6/17/20.

On October 8, 2021, after the close of discovery, ADG renewed its summary judgment motion.[28] And on December 3, ADG filed objections in response to FIMIC's declaration of Erica Canaia (the Canaia Declaration), FIMIC's chief executive officer.[29]

## II.     Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence, and any justifiable inferences drawn therefrom, should be construed in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and adduce affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 447 U.S. at 257. "A mere 'scintilla' of evidence . . . will not suffice; there must be a sufficient showing that the jury could

---

28   ECF 76.

29   ECF 86.

reasonably find for [the non-movant]." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### A.    ADG's Objections to The Canaia Declaration

ADG lodges several objections to key provisions of the Canaia Declaration.[30] These objections fall into four broad categories: (1) sham affidavit objections based on purportedly inconsistent testimony; (2) improper expert opinion and legal conclusion objections; (3) speculation and lack of personal knowledge objections; and (4) hearsay objections. The Court addresses each of these in turn.

### 1.    The Sham Affidavit Objections

ADG primarily argues that the declaration contradicts Canaia's deposition testimony in an effort to evade summary judgment, and therefore violates the so-called sham affidavit rule.[31] These objections are overruled.

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657–58 (11th Cir. 1984). But to "allow every . . . variation in a

---

[30]   *See generally* ECF 75-1 (Canaia Decl.); ECF 81-1 (ADG's Objs.).

[31]   *See generally* 81-1.

witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness . . . was stating the truth." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986). Accordingly, courts have distinguished discrepancies in testimony which create transparent shams from discrepancies which create issues of credibility. *Id.* at 953. The latter go to the weight of the evidence, not its admissibility, and "require resolution by the trier of fact." *Id.* at 953–54 (citing *Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir.) (summary judgment was improper even though the party's testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham"), *cert denied sub nom.*, *Indiana v. Choudhry*, 434 U.S. 997 (1977)).

Here, the bulk of ADG's objections to the declaration address perceived inconsistencies with Canaia's deposition testimony regarding the existence—or lack thereof—of a written contract. ADG objects that:

- Paragraph 4 "includes an improper conclusion that FIMIC's RAS filter technology is 'proprietary,'" and thus inconsistent with Canaia's admission that "there was no agreement between FIMIC and ADG that says FIMIC was sharing trade secrets that ADG could not disclose";[32]

---

[32]   ECF 86, at 2.

- Paragraphs 7–14 "describe[ ] various provisions contained in a written document (described in her Declaration as the '2010 Agreement'). . . . Yet, . . . Canaia . . . admitted that no written agreement existed, and there was only a written proposal which was never signed";[33]

- Paragraph 15 "is improper because it makes a legal conclusion about ADG's alleged performance under a written agreement that FIMIC admits the parties never signed";[34]

- Paragraphs 16–18 "are improper because they also make legal conclusions about ADG's alleged breach of a written distributorship agreement that FIMIC admits was never signed";[35]

- Paragraph 19 concludes the RAS Filter's processes "constitute its confidential trade secrets," but "this statement contradicts Ms. Canaia's own deposition testimony in which she admitted that no written distributorship agreement was ever entered into";[36]

- Paragraph 20 discusses how "FIMIC supplied ADG with trade secret information which it labeled 'confidential,'" but Canaia "admitted that no written distributorship agreement was ever entered into";[37] and

- Paragraph 22 "contends that FIMIC disclosed its trade secrets to ADG pursuant to the terms of the '2010

---

[33] *Id.* at 2–3.

[34] *Id.* at 3.

[35] ECF 86, at 3–4.

[36] *Id.* at 4.

[37] *Id.* at 5.

> Agreement' . . . which . . . [was] never entered into by
> the parties, and therefore should not be considered."[38]

As discussed in greater detail below,[39] these objections reflect ADG's misunderstanding of FIMIC's theory of the breach of contract in this case. Specifically, while FIMIC acknowledges that the Contract was never executed, it argues that certain of the contract's terms were nevertheless incorporated into the oral Agreement by virtue of the parties' performance. Canaia testified to this point repeatedly throughout her deposition.[40] The Court finds that the declaration is not a sham on these points, and overrules ADG's objections.

ADG also objects to Paragraphs 25–28 of the declaration, in which Canaia describes steps FIMIC supposedly took to preserve the confidentiality of its trade secrets.[41] ADG insists that this is inconsistent with Canaia's deposition testimony

---

[38]   *Id.*

[39]   *See infra* Section B.1.

[40]   *See, e.g.*, ECF 75-1, at 36:18–36:25 ("Q. Well, let me ask you this. I take it you would agree FIMIC never asked ADG to sign [a nondisclosure agreement]. Do you agree with that? A. I agreed with it five minutes ago. Yes. I didn't ask them to sign it. As I said, it was included in the recent [verbal] contract that we have discussed."); *id.* at 41:19–41:25 (discussing the Contract's noncompete clause and FIMIC's understanding that it was part of the oral Agreement); *id.* at 42:12–42:17 ("I said it was not signed. . . . There was a verbal agreement. It was discussed but not signed. So it was a blocked discussion at this point. All the other points were discussed and confirmed.").

[41]   ECF 86, at 6.

because she admitted that no U.S. customer signed a purchase order containing any confidentiality agreement while ADG was acting as FIMIC's distributor. ADG's argument is belied by Canaia's deposition testimony, and its objection is therefore overruled.[42] Canaia's deposition testimony reflects that FIMIC would not execute a non-disclosure agreement with customers buying its RAS Filters through ADG, but the declaration is silent about what sort of non-disclosure agreements ADG did or did not require its own customers to sign.

Finally, ADG objects to other paragraphs in the declaration on the same grounds, including Paragraphs 38–39, in which Canaia states that none of the information from FIMIC's website, patent filings, and owner's manual includes FIMIC's trade secrets, as a "transparent effort by FIMIC to refute ADG's arguments that FIMIC failed to take steps to protect the confidentiality of its trade secrets."[43] This objection identifies a genuine dispute of material fact as to whether FIMIC's efforts were sufficient to protect its alleged trade secret information, not an inconsistency with Canaia's deposition testimony. At its core, ADG's objection

---

[42]  *See* ECF 75-1, at 37:1–34:4.

[43]  ECF 86, at 7.

is merely to the self-serving nature of Canaia's declaration on this point.[44] The Eleventh Circuit has repeatedly held that a self-serving declaration based on personal knowledge can defeat summary judgment, even if the district court doubts its veracity. *See United States v. Stein*, 881 F.3d 853, 856 (11th Cir. 2018) (holding that "an affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated"); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."), *modified on other grounds on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005). Accordingly, the objections are overruled.

---

[44] *See* ECF 75-1, at 85:11–87:10 (detailing Canaia's understanding of alleged trade secret information FIMIC provided to ADG as part of the Agreement).

### 2. The Improper Expert Opinion and Improper Legal Conclusion Objections

ADG also objects to Paragraph 23 of the declaration, in which Canaia states that ADG's CFO Machine operates like FIMIC's RAS Filter, because she is not qualified to offer this "expert opinion" and has no firsthand knowledge of the CFO Machine's mechanics.[45] The Court does not rely on the declaration for this point in resolving ADG's summary judgment motion. Even so, Canaia, as the chief executive officer of FIMIC, may rely on her personal knowledge. Canaia testified at deposition that, while she did not view the inside of the CFO Machine, she personally replaced a CFO Machine with a RAS Filter for one customer.[46] Accordingly, Canaia is competent to testify that the CFO Machine and RAS Filter operate similarly based on her personal knowledge of the RAS Filter's mechanics and purpose.

ADG also objects to Paragraph 24 of the declaration, in which Canaia alleges that ADG's sale of "at least six CFO filters to customers" is a breach of contract, because she does not explain how ADG's sale of the CFO Machines breached any agreement between the parties.[47] Likewise, ADG objects that Paragraphs 31–36 of

---

[45]   ECF 86, at 5–6.

[46]   *See* ECF 75-1, at 144:2–145:10.

[47]   ECF 86, at 6.

the declaration contain improper legal conclusions.[48] In those Paragraphs Canaia states that ADG's CFO Machines use "colors that are confusingly similar to FIMIC's," and that customers have allegedly confused the machines.[49]

The Court reads Paragraph 24 as an example of ADG's conduct that was allegedly at odds with the terms of the oral Agreement, not a legal conclusion about whether ADG breached the Agreement as a matter of law. Similarly, Paragraphs 31–36 detail ways in which Canaia views the RAS Filter's design as distinctive, based on her personal knowledge of competitors' products and her own lay opinion. ADG's objections are overruled, and the Court disregards any conclusions these Paragraphs might contain about whether the Agreement was breached as a matter of law, or whether the elements of the Trademark Claims are satisfied as a matter of law.

### 3.  The Speculation and Lack of Personal Knowledge Objections

ADG raises two speculation objections. First, it argues that Canaia, in Paragraph 46, speculates that ADG was "undoubtedly aware" that FIMIC's competitors "utilize alternative designs that are not confusingly similar" to the

---

[48]   *Id.* at 7.

[49]   ECF 81-2, ¶¶ 31–36.

RAS Filter.[50] The Court does not rely on this Paragraph to resolve ADG's summary judgment motion. Accordingly, the objection is overruled.

Second, ADG argues that in Paragraph 51 Canaia asserts that "[e]ven if a customer eventually understands that a CFO [M]achine was made by ADG and not FIMIC, customers and potential customers are nevertheless confused at trade shows and in the market."[51] The Court likewise does not rely on this Paragraph to resolve ADG's summary judgment motion, and notes that, in any case, it reflects Canaia's testimony regarding her understanding of what customers thought based on what they told her. This objection is more properly framed as a hearsay objection, as with ADG's objection to Paragraph 50, discussed below. The objection on speculation grounds is overruled.

### 4.    The Hearsay Objections

Finally, ADG objects to Paragraph 50 as "pure hearsay testimony."[52] Paragraph 50, like Paragraph 51, explains that customers have told Canaia that they confused the CFO Machine with the RAS Filter.[53] On their face, these

---

50   ECF 86, at 8.

51   *Id.* at 8.

52   *Id.*

53   ECF 81-2, ¶¶ 50–51.

Paragraphs contain hearsay. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (cleaned up). Nevertheless, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id.* at 1323 (cleaned up). The most obvious way to reduce this hearsay to admissible form is to call as witnesses at trial FIMIC's identified customers—representatives from Arpema and Aarom Industries—to testify about their own personal observations of the CFO Machine. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (recognizing that the plaintiff "might attempt to prove that such statements were made by putting on testimony of witnesses who have personal knowledge" of the statements). Thus, ADG's hearsay objections are overruled.

### B.   FIMIC's Causes of Action

#### 1.   The Contract Claims

The Court first addresses the Contract Claims, as the terms of the Contract help guide resolution of the Trade Secrets Claims.

ADG argues that FIMIC should be barred from attempts to enforce the terms of the written Contract "for the first time in response to ADG's summary judgment

motion."[54] Instead, ADG maintains that FIMIC's breach of contract claim is premised on the oral Agreement, and therefore barred by the statute of frauds,[55] or that the Contract Claims are barred by the applicable statutes of limitations.[56] ADG contends that the Contract Claims accrued when, in April 2015, FIMIC supposedly learned that ADG had begun supplying parts related to the FIMIC Filter without authorization; therefore, per the applicable statute of limitations, the Contract Claims must have been brought by April 2019—months before FIMIC filed this lawsuit in December 2019.[57]

FIMIC responds that the oral Agreement incorporated the terms of the Contract, with the exception of Paragraph 1.3, which would have obligated ADG to purchase at least five RAS Filters per year.[58] Accordingly, FIMIC argues that ADG was bound by several restrictive covenants that, by their express terms, survived FIMIC's termination of the oral Agreement.[59] Those covenants include: the non-compete clause (Paragraph 5.1), the confidentiality clause (Paragraph 8.1),

---

[54]  ECF 84, at 2.

[55]  *Id.* at 4–5.

[56]  ECF 76-1, at 22.

[57]  *Id.* at 22–23.

[58]  ECF 81, at 10.

[59]  *Id.*

and the prohibition on ADG's use of FIMIC's "distinctive signifiers" (Paragraph 9.2).[60]

For the reasons that follow, ADG's summary judgment motion is denied as to the breach of contract claim, but granted as to the alternate claims for promissory estoppel and unjust enrichment.

### i. The Breach of Contract Claim

### a. Notice of the Theory of Breach

As an initial matter, ADG argues that, because FIMIC failed to plead the breach of any specific provision from the Contract, the Contract Claims fail as a matter of law. In its reply brief, ADG argues that FIMIC's identification of various provisions in the Contract that ADG allegedly breached is tantamount to amending its complaint in a brief opposing summary judgment, and that these provisions represent new theories or claims that should be disregarded.[61] The Court disagrees.

While it is true that, as ADG argues, "[a] plaintiff may not amend [his or her] complaint through argument in a brief opposing summary judgment,"[62]

---

[60]  *Id.*

[61]  ECF 84, at 4.

[62]  *Id.*

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004), that is not what FIMIC did here. Rather, FIMIC explicitly pleaded that "ADG breached the distribution agreement [(*i.e.*, the Contract)] in numerous respects . . . includ[ing] misappropriating FIMIC's confidential information and selling parts for FIMIC equipment without approval from FIMIC."[63] Furthermore, FIMIC's corporate representative testified that FIMIC understood the Contract "was completely discussed" and incorporated into the oral agreement, apart from one provision.[64] Therefore, ADG had notice of FIMIC's theory of liability well before summary judgment. *Cf. Varazo v. Keiser Corp.*, 754 F. App'x. 918, 919 (11th Cir. 2018) (affirming district court dismissal of design-defect claim where *plaintiff gave no notice* of his failure-to-warn theory); *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) (summary judgment affirmed where plaintiff attempted to assert an alternative theory of supervisory liability *not pled in his complaint*).

   The Court finds that FIMIC adequately pled its breach of contract theory, and that ADG had sufficient notice of it before the summary judgment stage. ADG's motion for summary judgment in this regard is denied.

---

[63]   ECF 1, ¶ 58.

[64]   ECF 75-1, at 26:19–26:22, 27:23–27:24; *see also supra* n.40.

### b.    The Statute of Frauds

Though the parties agree that the Agreement was an oral contract, they dispute its terms. FIMIC insists that ADG only refused to sign the written Contract because of Paragraph 1.3, but otherwise incorporated the remainder of the Contract's terms into the Agreement through performance.[65] ADG argues that the unsigned Contract's terms could not have informed the Agreement and, in any case, enforcement of the oral Agreement is barred by Georgia's statute of frauds.[66]

Georgia's statute of frauds requires, in pertinent part, that "[a]ny agreement that is not to be performed within one year from [its] making" must be in writing and signed by the party against whom the agreement is to be enforced. O.C.G.A. § 13-5-30(5). Paragraph 9 of the unsigned Contract indicates that the Contract would have lasted for a three-year term.[67] Further, the restrictive covenants FIMIC seeks to enforce call for surviving the termination of the Contract.[68] Assuming then, *arguendo*, that these terms of the unsigned Contract were incorporated into

---

[65]   ECF 81, at 10.

[66]   ECF 84, at 2–4.

[67]   ECF 81-3, ¶ 9.

[68]   *E.g., id.* ¶¶ 8.1, 9.2.

the parties' oral Agreement, the Agreement could not be performed within one year. So, the statue of frauds would ordinarily apply.

However, Georgia law recognizes an exception to the statute of frauds "where there has been performance on one side, accepted by the other in accordance with the contract." O.C.G.A. § 13–5–31(2). "Enforcing an unsigned agreement under this exception is premised on estoppel principles." *Hemispherx Biopharma, Inc. v. Mid-S. Cap., Inc.*, 690 F.3d 1216, 1226 (11th Cir. 2012) (citing *Nowell v. Mayor & Council of Monroe*, 177 Ga. 648, 648 (1933)). To proceed under this theory, Georgia law requires that FIMIC demonstrate a "mutuality of action":

> [The party seeking to enforce the unsigned contract must show] that it performed one or more acts pursuant to and in furtherance of the contract sought to be enforced, and the other party accepted that performance pursuant to the agreement. The act performed must be consistent with the existence of a contract, inconsistent with the lack of a contract, and essential to the contract, such that it resulted in both a loss or injury to the party seeking to enforce the unsigned contract and a benefit to the other party.

*Id.* (citation omitted).

Here, FIMIC has adduced evidence that it provided ADG with operational materials, FIMIC's "distinctive signifiers," and information about the processes and workings of the RAS Filter, and exclusive dealership rights over its flagship

product, among other things.[69] FIMIC appeared at trade shows with ADG, sent RAS Filters directly to customers at ADG's instruction, and developed marketing materials with ADG.[70] That ADG agrees either party could have terminated the Agreement, as provided in the unsigned Contract, and argues FIMIC did so in April 2015,[71] bolsters FIMIC's contention that the Agreement incorporated the unsigned Contract's terms. However, perhaps the best evidence of a mutuality of action is that ADG admittedly operated as FIMIC's exclusive North American agent for five years.[72]

In this case, where the parties do not dispute that the Agreement was a valid contract, it is difficult to surmise what other consideration FIMIC could have bargained for if not the restrictive covenants detailed in the Contract. The facts developed at trial might show otherwise. However, on this record, the facts show a give-and-take consistent with the terms of the unsigned Contract. And under Georgia law, "[t]he question of whether there has been part performance sufficient to warrant application of this exception to the statute of frauds is generally one for

---

[69]   ECF 85, at ¶¶ 17–21.

[70]   *See* ECF 75-1, at 19 (FIMIC deposition testimony regarding ADG marketing efforts); *id.* at 21 (discussing ADG's commission structure post-April 2015).

[71]   ECF 76-1, at 18; ECF 76-6, ¶ 7.

[72]   *Id.* ¶¶ 2–3.

the jury." *Id.* (citing *Hathaway v. Bishop*, 214 Ga. App. 870, 871 (1994)). Accordingly, ADG's summary judgment motion on statute of fraud grounds is denied.

### c.    The Statutes of Limitations

ADG argues that four-year statutes of limitations apply to the Contract Claims.[73] FIMIC insists that because the Contract was reduced to writing and its terms inform the Agreement, a six-year statute of limitations applies.[74] ADG's argument prevails.

Even accepting FIMIC's theory that the written Contract's terms inform the oral Agreement, its argument that the six-year statute of limitations should apply is at odds with well-settled Georgia law: "When a contract is not wholly in writing, but is partly in writing and partly in parol, the entire contract is considered as one in parol." *Jankowski v. Taylor, Bishop & Lee*, 154 Ga. App. 752, 754, *aff'd*, 246 Ga. 804 (1980). And the statute of limitations for breach of an oral contract is four years. O.C.G.A. § 9-3-25; *accord Kueffer Crane & Hoist Serv., Inc. v. Passarella*, 247 Ga. App. 327, 329 (2000). Four-year limitations periods also apply to claims for promissory estoppel, O.C.G.A. § 9-3-25, and unjust enrichment, *id.* § 9-3-26.

---

[73]   ECF 76-1, at 22.

[74]   ECF 81, at 11.

### d.    Accrual of the Contract Claims

The parties dispute when the Contract Claims accrued. ADG argues that the Contract Claims accrued in April 2015 when FIMIC terminated the oral Agreement. But as FIMIC's counsel explained during oral argument, the alleged breaches FIMIC is traveling under relate to the Agreement's purported restrictive covenants, the alleged breaches of which occurred *after* the Agreement terminated, as late as 2017 and 2019.[75] These alleged breaches pertain to ADG's use of FIMIC's proprietary trade secret information to reverse engineer the RAS Filter and create the CFO Machine, and ADG's subsequent sale of the CFO machine.[76] If a jury finds that the oral Agreement incorporated the unsigned Contract's terms, including the restrictive covenants, then a jury could also find that ADG's admitted reverse engineering of the RAS Filter and sale of CFO Machines breached the oral Agreement and occurred within four years of this suit, such that the Contract Claims do not run afoul of their statutes of limitations.[77]

Accordingly, the Court denies summary judgment to ADG on statute of limitations grounds. Because there are genuine issues of material fact to resolve,

---

[75]   ECF 81-1, ¶¶ 70, 72.

[76]   ECF 81, at 11–12.

[77]   ECF 85, ¶ 23.

ADG's motion for summary judgment on FIMIC's breach of contract claim is likewise denied.

### ii.      Alternative Claims

### a.      Promissory Estoppel

FIMIC asserts two causes of action in the alternative to its breach of contract claim: promissory estoppel and unjust enrichment. The doctrine of promissory estoppel acts to supply consideration, which would otherwise be lacking, by the reliance of the promisee on the promise of another. *Everts v. Century Supply Corp.*, 264 Ga. App. 218, 220 (2003). However, where parties enter into a contract with bargained for consideration, the terms of which include the promises alleged in support of a promissory estoppel claim, promissory estoppel is not available as a remedy. *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005) (citation omitted). As noted above, ADG does not dispute that the oral Agreement was a valid and enforceable contract; ADG merely contests that the Agreement incorporated the unsigned Contract's terms. Though a party is permitted to plead claims in the alternative as FIMIC has done here, Fed. R. Civ. P. 8(a)(3), when neither party disputes the existence of a valid contract the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative. *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006).

As a result, summary judgment is granted to ADG as to FIMIC's promissory estoppel claim.

### b.    Unjust Enrichment

With respect to the unjust enrichment claim, the analysis differs. "[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery . . . [that] applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Tidikis v. Network for Med. Comms. & Research, LLC*, 274 Ga. App. 807, 811 (2005). Unjust enrichment is a claim in equity. *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1998). "It is axiomatic that equitable relief is only available where there is no adequate remedy at law." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518–19 (11th Cir. 1994); *see also* O.C.G.A. § 23-1-4 ("[E]quity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law.").

Even at the summary judgment stage, dismissing an equitable claim is ordinarily "not appropriate merely because [a claimant] is prohibited under Georgia law from *recovering* under a breach of contract theory and an unjust enrichment theory. . . . [The claimant] cannot recover under both [legal] and [equitable claims,] but will be required at trial to elect under which of these

remedies it wishes to proceed." *WESI, LLC v. Compass Env't, Inc.*, 509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007) (cleaned up) (collecting cases).

However, as ADG correctly notes, FIMIC's unjust enrichment claim is preempted by its GTSA claim because the claims are both premised on ADG's alleged misappropriation of FIMIC's trade secrets.[78] *See Robbins v. Supermarket Equip. Sales*, LLC, 290 Ga. 462, 465–67 (2012) ("For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act. . . . The fact that the drawings were not ultimately found to be trade secrets under the [GTSA] did not make the preemption clause inapplicable. Rather the key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the GTSA."); *see also Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297–98 (11th Cir. 2003) (affirming the district court's grant of summary judgment on the plaintiff's unjust enrichment and other state law tort claims as preempted by the GTSA). Therefore, ADG's summary judgment motion is granted as to FIMIC's unjust enrichment claim as well.

---

[78]   ECF 76-1, at 11; *see also* ECF 1, ¶¶ 67, 69 ("ADG has obtained a significant benefit to FIMIC's detriment, including its use of FIMIC's proprietary information and trade secrets. . . . Failure to compensate FIMIC for the benefit conferred to ADG is unjust.").

2.      **The Trade Secrets Claims**

ADG next asserts that the Trade Secrets Claims fail as a matter of law "due to FIMIC's failure to take reasonable measures to keep information about its RAS [Filter] secret."[79] FIMIC responds that its alleged trade secrets include the design components, materials used, and "the processes by which the [RAS Filter] operates,"[80] and that it took reasonable measures to protect the secrecy of this information and prevent it from reaching the "public domain."[81] FIMIC further contends that the Trade Secrets Claims address information it gave ADG during the course of their relationship about "*how* the [RAS Filter] was constructed and *why* it was designed the way that it was," which ADG later used to design the CFO Machine.[82]

The DTSA provides a federal cause of action to the owner of a trade secret that is misappropriated. 18 U.S.C. § 1836(b). To show a violation of the DTSA, the plaintiff must show that (1) it holds a trade secret, (2) the trade secret was misappropriated, (3) the defendant's actions damaged the plaintiff, and (4) the

---

79    ECF 76-1, at 1.

80    ECF 81, at 13.

81    *Id.* at 14-15.

82    *Id.* at 15–16.

trade secret implicates interstate or foreign commerce. *Id.* § 1836(b)(1). Similarly, a plaintiff seeking to establish a GTSA claim must show that (1) it had a reasonable basis for believing its product was a trade secret, and (2) the defendant misappropriated the product (*i.e.*, the defendant knowingly acquired, disclosed, or used the product by improper means). *Sutter Cap. Mgmt., LLC v. Wells Cap., Inc.*, 310 Ga. App. 831, 833–34 (2011).

The DTSA and GTSA define trade secrets as "all forms and types" of business information that "the owner thereof has taken reasonable measures to keep secret; and . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); O.C.G.A. § 10-1-761(4). Misappropriation is the (a) "acquisition of a trade secret" by a person who knows or should know the secret was improperly acquired or (b) "disclosure" or "use of a trade secret" of another without express or implied consent. 18 U.S.C. § 1839(5); O.C.G.A. § 10-1-761(2).

ADG admits that it engaged in "reverse engineering," which is not a violation of the DTSA or GTSA if the information used was not subject to a patent. 18 U.S.C. § 1839(6)(B); O.C.G.A. § 10-1-761(1). ADG also notes that the RAS Filter

is not sealed in a box, so its mechanical components are visible; FIMIC's website includes a three-minute video showing the RAS Filter's features, as well as other information about the RAS Filter; FIMIC's Italian patent filings include renderings of the RAS Filter; FIMIC has publicly displayed the RAS Filter at trade shows; FIMIC never stamped information it gave ADG as confidential; and FIMIC has sold the RAS Filter to customers who have no duty to maintain confidentiality.[83] ADG emphasizes that (1) it did not have a written agreement with FIMIC containing any sort of non-disclosure or non-circumvention provision, and (2) ADG's U.S. buyers of the RAS Filter did not sign confidentiality agreements—or any agreements—with FIMIC.[84]

These arguments are well taken but insufficient to warrant summary judgment in ADG's favor given FIMIC's theory of the case. FIMIC's Trade Secrets Claims seek recourse for the unpatented information ADG allegedly gleaned under the auspices of the oral Agreement and leveraged to create the CFO Machine after the Agreement was terminated. As discussed above, the question of whether the unsigned Contract's terms, including the non-disclosure and non-circumvention provisions,  were incorporated into the oral Agreement is properly

---

[83]   ECF 76-1, at 7–8.

[84]   *Id.* at 8–9.

one for the jury.  If a jury were to find in FIMIC's favor on this point, then the jury could also find that FIMIC took reasonable measures to protect the trade secret information it shared with ADG under the Agreement. This is a disputed issue of material fact that a jury must resolve. *See Arconic Inc. v. Universal Alloy Corp.*, 2019 WL 12529047, at *5 (N.D. Ga. Aug. 7, 2019) ("The reasonableness of a plaintiff's efforts [to maintain the secrecy of a trade secret] 'presents a question for the trier of fact.'") (quoting *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998)).

To be clear though, the success of the Trade Secrets Claims does not necessarily rise or fall with the breach of contract claim. Even if the jury found that the salient terms of the unwritten Contract were not incorporated into the oral Agreement, "confidentiality agreements are not required to garner protection under the GTSA." *Candy Craft Creations, LLC v. Gartner*, 2015 WL 1541507 at *22 (S.D. Ga. 2015); *cf. Argos USA LLC v. Young*, 2019 WL 4125968, at *12 (N.D. Ga. June 28, 2019) (The "DTSA requires the same showing [as the GTSA], but with the additional requirement that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."). But by the same token, "absolute secrecy is not required for information to retain trade secret status." *Tronitee, Inc. v. Shealy*, 248 Ga. App. 442, 450 (2001), *overturned on other grounds*,

*Williams Gen. Corp. v. Stone*, 279 Ga. 428 (2005). At bottom, whether FIMIC achieved the requisite quantum of secrecy to warrant protection over its Trade Secrets Claims is a quintessential jury question. Accordingly, the Court denies ADG's summary judgment motion as to the Trade Secret Claims.

### 3.    The Trademark Claims

ADG argues that the Trademark Claims "are deficient as a matter of law, because FIMIC cannot satisfy its burden of showing that the design of the RAS machine is non-functional."[85] FIMIC argues that customers have expressed confusion about the RAS Filter's distinctive non-functional components because of the CFO Machine's allegedly similar shape, color scheme, and overall appearance.[86]

Georgia law "protects trade names by statute and by common law." *Diedrich v. Miller & Meier Assoc., Architects & Planners, Inc.*, 254 Ga. 734, 736 (1985); *accord Inkaholiks Luxury Tattoos Ga., LLC v. Parton*, 324 Ga. App. 769, 770 (2013). FIMIC has not alleged that it owns any trademarks that comply with the registration requirement of Georgia's trademark infringement statute, *see* O.C.G.A. § 10-1-441, *et seq.*, or the Lanham Act's trademark infringement provision, *see* 15 U.S.C. § 1114,

---

[85]   ECF 76-1, at 2.

[86]   ECF 81, at 19.

so the Court assumes FIMIC's claims are for common law trade dress infringement and Lanham Act trade dress infringement. O.C.G.A. § 10–1–452; 15 U.S.C. § 1125(a). *See also Diedrich*, 254 Ga. at 736 (finding that the Georgia Act "expressly preserves common law" trademark rights). And, though FIMIC's response brief references the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372,[87] the Complaint is silent regarding any Georgia statutory unfair competition claim, so the Court disregards that reference except insofar as the standards for common law and Lanham Act trade dress infringement claims are essentially the same as the standard for an unfair competition claim under Georgia law. *See Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985).

Trade dress is "the total image of a product," which "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). To sustain a claim for trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the plaintiff must show that (1) its trade dress is inherently distinctive or has acquired secondary meaning, (2) its trade dress is primarily non-functional, and (3) the defendant's trade dress is

---

[87] *Id.* at 25.

confusingly similar. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 989 F.3d 1279, 1288 (11th Cir. 2018) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986)).

Here, the record evidence establishes a dispute of material fact regarding each element of the Trademark Claims. Regarding the first element, ADG's admission that it "reverse engineered" the RAS Filter to create the CFO Machine is enough to raise a genuine dispute of material fact as to whether the RAS Filter acquired a secondary meaning. The Eleventh Circuit has noted that "proof of intentional copying is probative evidence on the secondary meaning issue." *See Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983). This admission and FIMIC's evidence that the CFO Machine looks more like the RAS Filter than other competitors' machines[88] raise a dispute of material fact as to the first element of the Trademark Claims.

Second, the parties dispute the functionality of FIMIC's trade dress. FIMIC bears the burden of rebutting the presumptive functionality of the RAS Filter's design. 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who

---

[88]   *Compare* ECF 81, at 21 *with* ECF 81-6.

asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."). However, "the issue of functionality has been consistently treated as a question of fact." *John H. Harland Co.*, 711 F.2d at 982 (citation omitted).

Here, as ADG argues, the existence of the Italian utility patent creates a strong inference that the RAS Filter's design was functional.[89] However, the Trademark Claims take aim at the RAS Filter's shape and color, not its internal mechanisms that provide plastic melt filtration and are inherently functional. Faced with this theory of trade dress liability, ADG maintains that "the appearance of the [RAS Filter] is dictated by the mechanical elements that enable it to operate as a plastic filtration machine."[90] FIMIC responds that "the distinctive shape and appearance of the FIMIC machine is clearly non-functional, as evidenced by the very different shape and appearance of its competitors' products."[91] The parties' arguments are each well taken and demonstrate that there is a genuine dispute of material fact as to the second element of the Trademark Claims. *See id.*

---

[89]   ECF 76-1, at 15–16.

[90]   *Id.* at 17 (quoting ECF 22-3, ¶ 26).

[91]   ECF 81, at 22.

Third, whether a defendant's trade dress is confusingly similar is likewise generally a question of fact. *Kohler Co. v. Titon Indus., Inc.*, Civ. A. No. 1:97CV428 RWS, 1999 WL 1043221, at *3 (N.D. Ga. 1999) (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980)). FIMIC argues that customers were confused by ADG's use of a color similar to the RAS Filter's "distinctive FIMIC blue."[92] The evidence shows that at least one FIMIC customer purportedly confused the CFO Machine with the RAS Filter when he saw the CFO Machine at a 2017 trade show.[93] ADG insists that its CFO Machine is typically painted black with silver or grey accents,[94] and, though the CFO Machine at the 2017 trade show was painted "violet," the surrounding display contained ADG's branding such that no reasonable consumer could confuse it with FIMIC or the CFO Machine with the RAS Filter.[95] These are disputed issues of material fact for a jury to sort out; ADG has not established that there could be no customer confusion as a matter of law.

ADG's summary judgment motion is denied as to FIMIC's Trademark Claims.

---

[92]   *Id.*

[93]   *Id.* at 24.

[94]   ECF 76-1, at 18.

[95]   *Id.* at 18.

### 4.    The Tortious Interference Claim

Finally, ADG argues that the Tortious Interference Claim is barred by the stranger doctrine and the privilege of fair competition.[96] FIMIC maintains that ADG's sale of a CFO Machine to Cedar Poly in 2019 tortiously interfered with its prospective business relationship with Cedar Poly, with which neither party had previously done business.[97]

FIMIC's cause of action is for tortious interference with *prospective* business relationships, which differs slightly from the typical tortious interference claim. To prevail on this claim, FIMIC must show that ADG: "(1) acted improperly and without privilege, (2) acted purposely and with malice and the intent to injure, (3) induced third parties not to enter into or continue a business relationship with [FIMIC]; and (4) caused [FIMIC] financial injury." *Looney v. M-Squared, Inc.*, 262 Ga. App. 499, 504 (2003) (cleaned up). Furthermore, FIMIC "must demonstrate that absent the interference, [the prospective business] relations were reasonably likely to develop." *Id.* (citation omitted). Because FIMIC has adduced no evidence that any business relationship between it and Cedar Poly was likely to develop, ADG is entitled to summary judgment.

---

[96]    *Id.* at 2; ECF 84, at 14.

[97]    ECF 81, at 25.

The record is entirely devoid of evidence that FIMIC was targeting Cedar Poly as a customer, let alone that FIMIC knew Cedar Poly existed before this lawsuit. The record likewise does not reflect that ADG, by virtue of its role as FIMIC's one-time exclusive distributor, learned about Cedar Poly and set out to usurp any future relationship between Cedar Poly and FIMIC. Indeed, the Complaint does not reference Cedar Poly at all. Without evidence of a prospective business relationship there can be no claim for tortious interference with a prospective business relationship. Accordingly, the Court grants ADG's summary judgment motion as to the Tortious Interference Claim.

## III.    Conclusion

ADG's objections to the declaration of Erica Canaia [ECF 86] are **OVERRULED.** ADG's renewed summary judgment motion [ECF 76] is **GRANTED IN PART and DENIED IN PART**. FIMIC may proceed to trial on the Trade Secrets Claims (Counts I and II), the breach of contract claim (Count III), and the Trademark Claim (Count VI). FIMIC's promissory estoppel claim (Count IV), unjust enrichment claim (Count V), and the Tortious Interference Claim (Count VII) are **DISMISSED**. The parties are **ORDERED** to file their joint proposed pretrial order within 30 days after entry of this Order.

**SO ORDERED** this 30th day of September, 2022.

Steven D. Grimberg
United States District Court Judge